Good morning, your honors. May it please the court. Kaylin Hadlock appearing on behalf of the petitioner Zhang under the supervision of Catherine Davis for the UC Irvine Appellate Litigation Clinic. I will address adverse credibility and my colleague Tessa Marasino will address corroboration. We'd like to reserve one minute for rebuttal. All right, so watch your clock. Yes, your honor. This court should reverse because in affirming the immigration judges adverse credibility finding the BIA violated due process and contravenes circuit law, which requires that IJs put a petitioner on notice that their credibility is in question and give them an opportunity to explain the perceived inconsistency. Once the petitioner has a reasonable opportunity to cure, the IJ must then provide a cogent, articulable basis for rejecting petitioner's explanation. For each of the bases underpinning the IJs opinion and affirmed by the BIA, the lower court failed to complete one or both of these mandatory procedural requirements. Even if that procedural framework had been satisfied, the inconsistencies and omissions affirmed by the BIA failed to satisfy the pre-real ID standard that only inconsistencies which go to the heart of the claim and are supported by substantial evidence can support an adverse credibility finding. First, the immigration judge noted omissions regarding the nature and extent of petitioner's injuries. Under Singh v. Ashcroft, omissions which are not offered to bolster a persecution claim cannot support an adverse credibility finding. Here, petitioner did not offer new facts to bolster his persecution claim. He answered the questions that were asked and clarified on cross-examination when asked specifically about his spleen injury. Petitioner was not put on notice of the perceived inconsistency and was therefore deprived of a reasonable opportunity to cure. Indeed, the court affirmatively declined to ask petitioner about the medical diagnosis certificate that he provided, but subsequently used the certificate's content. At this point, may I ask you a question about the government's argument regarding exhaustion? Yes, Your Honor. So, if I look at the petitioner's brief on appeal to the BIA on AR-23, it says, During his testimony, respondent did not mention that he had been tied to an iron hook when he was beaten to unconsciousness with a rubber police baton as stated in his I-589 declaration. However, respondent was never asked about this omission nor given opportunity to explain why he had omitted it. It appears from the brief that that is the only failure to be given an opportunity to explain that's been exhausted. Do you agree with that or not? Well, Your Honor, under LeBron, so long as a claim is properly raised before the IJ, arguments in support of the claim are deemed exhausted. In his opening brief, as you mentioned before, the BIA petitioner did challenge the IJ's adverse credibility finding. The agency is obligated to follow the law of this circuit, and it was not followed when the immigration judge failed to put petitioner on notice or provide him a reasonable opportunity to cure perceived inconsistencies, which would form the basis of her adverse credibility finding. For those reasons, the arguments were exhausted. So you're saying that he had no obligation to raise the exact inconsistencies that you're challenging before the Ninth Circuit, before the BIA? Is that your position? That's right, Your Honor. So long as we raised the claim that the circuit law was not followed and that due process was contravened, those notice arguments are permitted to be heard. They were exhausted under LeBron, under Ninth Circuit precedent and Supreme Court precedent, Your Honor. The immigration judge found an omission where petitioner failed to testify that he was tied to an iron hook before he was beaten, a fact he included in prior records. Here, too, the omission was not offered to bolster petitioner's claim. Moreover, pure speculation and conjecture cannot support an adverse credibility finding. Here, the immigration judge merely… How is this speculation or conjecture? I mean, isn't your argument really that this is an omission and an omission does not give rise to an inconsistency? So the IJ and the BIA had no business finding as they did? Yes, Your Honor. That's true. However, the immigration judge postulates in her opinion that the petitioner would have suffered more injuries than he testified to, specifically due to the iron hook that he omitted in his testimony. Can I go back to my question then? So you're saying if you raise just I'm challenging adverse credibility, then the BIA then needs to just go back and reanalyze everything? That your client doesn't have any obligation to put them on notice about what specific aspects of the adverse credibility determination you're challenging? And what authority do you have for that position? The authority is LeBron, Your Honor. I don't have the entire name of the case in front of me. If you give me one moment. That's fine. Go ahead, please. Yes, Your Honor. As for the iron hook omission, because omissions are treated differently in the circuit, it cannot support an adverse credibility finding was not used to bolster the claim. The agency also held that there were inconsistencies involving whether petitioner's mother was ever arrested. Indeed, there is no discrepancy on the record. Petitioner consistently testified that his mother was arrested in 2007. And petitioner was not put on notice that his brief mistake when asked whether he knew if his mother was arrested, which he corrected on the record, put his credibility into question. As a result, the perceived inconsistency involving petitioner's mother's arrest cannot support an adverse credibility finding. Regarding the duration of petitioner's employment, inconsistencies in specific dates and times that are immaterial to the persecution claim cannot support an adverse credibility finding. How long petitioner was employed with the government is not central to his claim. I think that's probably your best point. But he said he was he was employed for 15 years. And I believe he said that on multiple occasions. Is that correct? He was employed for 15 years. On one occasion, he said he was a manager for 10 years. Is there is there any necessary inconsistency between those two things? I mean, don't people sometimes get promotions during the course of their employment? That's exactly right, Your Honor. And there's no clarity on the record as to what he meant when he said he was employed and if he was employed in that position for 10 years or if he meant overall. But he did confirm he was employed with the government from 1989 to 2004. And that's consistent. On his asylum application, he put that he was employed with the government. Right. That was the 15 years was on the asylum application. On his I-589 application, he said 10 years, Your Honor. 10 years. That's right. And the supplemental declaration he submitted. Supplemental declaration said 15? No, that said 10 years. He testified that to the 15 years when the government clarified the dates. And I see that I'm running out of time, Your Honor. Might I finish my answer? Sure. Yeah. Specifically, he was asked about the span of time from 1989 to 2004 once. And when he was asked about that, he testified that he worked for 15 years there. Well, what was the exact question on the original form that he filled out? I don't believe it was an exact question. Maybe something about the jobs you had. It was a supplemental declaration the petitioner offered to provide a narrative of what occurred in China when he was persecuted. And accordingly, the court should grant the petition. Thank you. Good morning, Your Honors. May it please the court. Tessa Maracino. Pre-Real ID proceedings must comply with constitutional guarantees of notice and opportunity to cure any perceived inconsistency that forms the basis of a denial. This court should grant the petition in remand because the agency did not give adequate notice that an adverse inference may be drawn from failing to present the brother's testimony. It overlooked and misstated petitioner's plausible explanation for failing to do so, and the agency incorrectly assumed that the brother's testimony constituted material, easily available, cooperative evidence. First, it is uncontested, as acknowledged by the BIA, that the IJ failed to request cooperation from petitioner's brother. The BIA construes the IJ's passing reference to the brother's testimony that occurred at a March hearing, where the IJ asked about a motion to consolidate, as sufficient to alert petitioner that cooperation was necessary. But petitioner had not yet testified, so the IJ had no basis to doubt his credibility that would require the need to cooperate. Once credibility was at issue, the IJ did not give petitioner notice and opportunity to explain required by Pre-Real ID case law. While Wren altered the notice standards governed in cases by the Real ID Act, it did not change Pre-Real ID requirements that must comply with the Fifth Amendment's promise of a full and fair hearing. As seen in Campo Sanchez, Soto Alarte, and Sinopean, the agency must clearly notify the petitioner about any perceived inconsistency. When asked a question, you argue that Zhang's brother's testimony is duplicative of other corroborating evidence, but what about the fact that Zhang's mother and brother were arrested in 2007? What is the other, where is that corroborated? Yes, Your Honor, so petitioner testified consistently to the fact that his mother and his brother were in fact arrested in 2007, and so there was no need for further cooperation to corroborate this point. Her question was, you argued everything the brother would say is duplicative, so where's the duplication? Yes, Your Honor, so the BIA found that the brother could have corroborated two issues, one, his own arrest, and then his mother and his brother's 2007 arrest. In regards to the events underlying petitioner's own arrest, he testified to that, and his wife provided sufficient corroborative evidence. Scads of corroboration there, okay? And then— So Chico isn't asking about that. And then in regards to specifically the 2007 arrest, that wouldn't have been duplicative, but the petitioner testified consistently. There was a minor dialogue that occurred where he was confused to what was being asked, but he never actually denied ever knowing that his mother and his brother were in fact arrested in 2007. He simply clarifies to the point when asked by counsel. All right, so you can see that that is not duplicative. Yes, Your Honor. Thank you. And so as— I want to ask you, is there a difference between what notice has to be provided and when for the two different contexts? One is to explain an inconsistency, and the other is to provide corroborating evidence. The IJ must follow a simple two-step process if credibility does become an issue. They, at that point, must notify and provide an opportunity to explain whether or not that could occur at the same IJ hearing. It could pause, and they could require the need to corroborate, but they must follow that simple two-step process of first notifying, allowing an explanation, or allowing such on the record. When the record was opened, the IJ asked petitioner if he and his brother ever lived together, and he responded no, but they live in the same area. Now, rather than inquire further, the IJ allowed DHS counsel to move on to a different topic, and when this occurred in Chen, this court held that the IJ denied the applicant a reasonable opportunity to explain in violation of due process. Here, the IJ invoked the adverse inference for failing to present his brother's testimony throughout its adverse credibility determination, and remand is required to allow petitioner a full and fair hearing in compliance with due process. And even assuming that adequate notice had been given, the agency ignored petitioner's reasonable explanation for failing to present his brother. Petitioner consistently testified that the brother was not a precipient witness, and his counsel added that it was his own choice not to testify. Yet the IJ reports the brother was not brought because petitioner did not want to have him. As recognized in SOTA Alarte, the IJ's failure… A remand would be appropriate for asylum and withholding, but we don't find that the IJ erred in saying that the CAT issue was not raised below. I mean, I see your argument in your reply brief that, you know, you say well-founded fear, but that's really more associated with asylum and withholding. That's not the more likely than not to be tortured CAT standard. And in your intro, you do say, you know, his application was originally for these three claims. But there's no mention of torture in the brief to the BIA. And if we don't agree that just saying fear of future… If we don't agree with you that just saying future persecution or saying well-founded fear exhaust the CAT issue, then what does that mean for the scope of the remand then? I think if I'm understanding your question correctly, I guess I'm saying I don't see CAT being exhausted below. That's really my point. And I'm pointing to what you point in your reply brief as ways where you think CAT has been exhausted, but I'm just not persuaded by that. Yes, Your Honor. Well, the BIA failed to rule on the CAT claim because they didn't find that persecution had occurred. They didn't affirm the IJ's lower order in that way. And so since the BIA didn't affirm on this, remand is required to allow. It's not a basis that the board affirmed on. Are you saying that IJ didn't reach the CAT claim? No, I apologize. The BIA didn't address the underlying persecution and CAT claim. I believe so, Your Honor. And I see that I'm running out of time. So if I may just wrap up. Finally, the agency assumed that the brother would corroborate material portions of petitioner's claim. But this is unsupported by substantial evidence as petitioner's brother was not a recipient witness and cannot corroborate his claim. Except that he could corroborate the one point that Judge Koh raised about his own arrest and the mother's arrest. Yes, Your Honor. While that he could corroborate that it's immaterial to petitioner's own claim that occurred three years prior to his continuing. I'm sorry. The continuing persecution of his family is not material to his claim. Well, as we see in lie, events involving third parties are less probative of an applicant's credibility in general. And so it's an insufficient basis to find an adverse inference. And so accordingly, this court should grant the petition and remand. Thank you. Thank you very much. Thank you for making the trip. May it please the court, Jacqueline Hagner on behalf of the Attorney General. This case is not about petitioner's religion. It is about petitioner's support for his mother's religion. And when asked if his mother had ever been arrested, petitioner testified that he did not know. And then when asked to explain how he did not know, petitioner then stated that his mother and his brother were arrested in 2007 for participating in a house church, which is the very same basis for his claim of persecution before this court. Yet he did not call his brother to testify. That, along with numerous other inconsistencies, is substantial evidence in support of the agency's adverse credibility determination. For the moment, let's assume that there's evidence to support the IJ's various affirmed credibility, just for purposes of argument. How do any of those credibility findings go to the heart of his claim that he will be persecuted in China because of his support for the right of his fellow citizens to practice religion? Yes, Your Honor. So in total, there were six inconsistencies, six general areas. They each do go to the heart, and I could explain that for you. So the arrest, as I just explained, his mother and his brother were arrested for the very same reason that he claims persecution. And so that does go to, and again, his claim is based on his support for his mother's religion, which his brother supported. The second inconsistency we could turn to is the injuries. So here a petitioner testified that he was diagnosed with exhaustion. However, the medical letter in support of his application said he was diagnosed with a cracked spleen. But isn't there exhaustion, and he went unconscious as a result of the beating, according to his consistent testimony. This is consistent throughout. He went unconscious as a result of the beating. Could that be not termed as exhaustion? That's possible, Your Honor, although a responder would maintain that being diagnosed with a cracked spleen is a significant event. He did testify about an injury to his back for which he was given medication for 14 days in the hospital, right? Yes, Your Honor. Okay, so there's a spleen. Yes. And he testified that he was beaten into exhaustion, beaten into exhaustion, and that's the worst thing that happened to him. And the IJ seemed to take great offense that exhaustion was the worst thing that happened to him. How can that, I mean, how can that possibly be a supportable finding based on what he said? Yes, a responder would maintain that it is still a significant. So I think what I would point the court to is in that medical letter. There really wasn't much statement regarding the exhaustion. It wasn't really much. There weren't many medical records discussing that medical history that you just described, Your Honor, that he was beaten into exhaustion. Didn't describe really his injuries. And that's what I think that's where the immigration judge was concerned here. No, we have no idea of knowing what medical records there could possibly be or would be. I don't, I mean, it's just an assumption that Chinese hospitals document their government's persecution and torture of their citizens. I don't know if we can make that assumption. Yes, understood that we do not know what Chinese hospitals document. However, it is petitioner's burden, and perhaps an explanation of... That's a letter. He put in a letter that said what it was. Yes, but the problem is the letter did not state anything that he said during his testimony. Well, back pain and being admitted and treated for the back pain. Yes. Again, so the respondent's position here is that it is still an inconsistency that is supported by substantial evidence. Understanding that reasonable minds can differ here. Under that standard, it is still an inconsistency that he does not discuss whatsoever a cracked spleen during his testimony. And the evidence submitted in support says something different. What he's asked specifically, didn't you have a cracked spleen? He said yes, right? He did agree. Okay. Yes. I can move on to another inconsistency. Can I ask a question? Let's say we remand on asylum. If it's the same factual predicate for all three claims, asylum, withholding and CAT, and the IJ largely denied the withholding and CAT claims on the same basis as the asylum claims, you would agree with that? Yes, Your Honor. And then the BIA just said, we think withholding and CAT are waived, so we're only going to address asylum. So if we were to reverse on asylum, what would the scope of remand be if essentially it's the same factual predicate to deny all three? The agency used the same factual predicate to deny all three. Right. Then we remand on all three claims or not? I believe we just remand on asylum and withholding, Your Honor. But why? It's the same factual predicate, and the IJ basically relied on that factual predicate to deny all three. My understanding of the circuit's case law is that when it, as you said, the same factual predicate, that because petitioner did not raise those claims. Well, why isn't the withholding? The withholding, they talk a lot about past persecution, which is, you know, relevant to both asylum and withholding, the well-founded fear, future persecution. That's all in this BIA brief. I don't see how the withholding is not exhausted. Right. Perhaps, perhaps the withholding. Would you concede on withholding or not? I would have to reconsider the withholding only because I believe that withholding has a different standard for nexus. And so these are essentially elements and issues that were not briefed to the board. And so at that point, petitioner abandoned that and forfeited any argument he had with that issue. Isn't this a pre-ID case? Yes, it is, Your Honor. Post-real ID is a different standard for asylum and withholding on nexus, but pre-real ID there isn't. Correct, Your Honor. My understanding is the nexus post-real ID perhaps is a little more is friendlier for petitioner. But the IJ always treats these generally together, right? If you're going to make an adverse credibility determination on asylum, you'll say, well, the withholding standard is lower. So I come to the same conclusion. They often do. I agree. They often do. So, I mean, we can quibble with, you know, yes, are there differences in the legal standard? I would agree with you. There are certainly some. But generally, if we look at how the agency treats asylum and withholding, they're always treated together. And so what if I find looking at this BIA brief, there's sufficiently notice given to the BIA that Mr. Jiang was challenging both the asylum and withholding decision of the IJ? Well, certainly in that situation, if you were to find that the board was sufficiently noticed, then, yes, that would be part of the scope of the remand. I would continue to disagree on CAT, though, because that would essentially be providing petitioner a whole second opportunity to present new evidence on a claim that he had already forfeited to the board. I believe, Judge Wardlaw, you had asked me the heart of the claim. Oh, excuse me, Judge McMahon. You had asked me the heart of the claim for injuries, and I think we've only made it through two of the six. So I'll move on to aliases. It does take a while to get through them all. Yes, it does. I agree, Your Honor. And so for aliases here, petitioner testified that he used two passports to enter the United States. Finding really bothered me, because you could be saying alias, you know, asking what aliases you have on a form, and you don't, a person could totally disregard, not conclude that the using a false name on the passport was an alias, because the meaning of the word alias is kind of like you went by a different name for some period of time. Not just that you used a forged document, which he said he did. He was very upfront about having used the Korean passport to get into this country. So perhaps a better way of looking at it was this was an omission on his asylum application. If I may, I think that this court has distinguished in the past an applicant who lies while fleeing persecution, which this court tends to be somewhat forgiving of, versus an applicant who lies in court. And when you sign an application, and you list on that application that you have not gone by any other aliases, that is a significant omission in court. But you would agree that an omission is insufficient to sustain an adverse credibility determination, right? And that's the law, right? So where the IJ essentially relied on omission, that can't support his or her adverse credibility determination. I guess I would agree, Your Honor, if that was the only omission, except we are looking at the totality of the circumstances. And so this is one piece of those totality of the circumstances. And if you look at the bigger picture here, we are adding up several inconsistencies between petitioner's testimony and his asylum application. But to determine whether it's an inconsistency, you can't rely on an omission to even make the determination that that is an inconsistency. I don't believe – I don't agree with that, Your Honor. I think that's the law. I think it's the law. Your Honor, I will defer to you that that is the law. However, it is a – it is still a relevant consideration in the totality of the circumstances here. If we're looking at the totality of the circumstances, where in the record is there any support for the IJ's oft-stated conclusion that permeates the entire decision that Mr. Jeong had some kind of permanent residency status in Korea and a five-year job contract in Korea to return to, and that he was living and working in Korea at about the time. She said that over and over and over again. I mean, it was like an idée fixe of hers, that he wasn't really in China at all. He was in Korea. And where in the record is there the slightest support for that, if you want to look at the totality of the circumstances? So those circumstances, Your Honor, that you described were not affirmed by the board. They were not referenced whatsoever in the board's decision. And so response position is – that does not play part of the agency's decision. I would tend to agree with you that those circumstances really just was – But something funny was going on at that hearing. Right. And it was certainly in the background. But to be sure, the board absolutely did not make any reference to any of the circumstances that you just mentioned. And so those are simply not before the court in our view. I can continue on through our inconsistencies. Next would be the manner in which Petitioner fled China. So here he testified that he was in hiding in I believe it was Tumen City from December 8th to the 14th. However, he also testified that he purchased a plane ticket. No, he never testified that he purchased a plane ticket. He testified that a plane ticket was provided by the snakeheads. There's nothing in this record that says, I went to the airport and I bought a plane ticket. Show me in the record where he said that. Well, he submitted the plane ticket. There was a plane ticket. He specifically said, my wife paid RMB 180,000 to the snakeheads and they gave me a fake passport with my picture on it and a phony name. And they gave me a plane ticket. Right. There's more to it. This has several levels, Your Honor. So beyond the level that we just discussed, the other level is that he has absolutely no documentation regarding his entry into the United States. He cannot recall the port of entry. And when he was asked about that, and he testified that he just didn't save receipts, which is curious or it lacks credibility because he certainly did save a hotel receipt. And of course, this plane receipt we just discussed. And so there seems to be a selective choice of which documents he provided to the court. And this goes to the heart of this claim, because this court has held that the events leading up to an applicant's departure is relevant to his claim of persecution. And so we can move on. Events leading up to his departure were that he heard the police were looking for him. He heard the police were looking for him. He went into hiding at his uncle's house. His wife paid a lot of money to some smugglers. He went under a false name to a city not his own. And he was lucky enough that nobody at the airport in Beijing asked a question. He succeeded in sneaking out of the country. How is that not evidence in support of his claim? Well, it's it's inconsistent with your honor. You just touched on another point here, which is that he succeeded in fleeing the country. That is everybody who applied for asylum here succeeded in fleeing the country. I understood your honor. The problem is, though, he testified that Chinese national or Chinese authorities were looking very hard for him. They were in fact, they went to his house. They were looking for him in City A. He was hiding in City B when he heard it was they were looking in City A. And then he went to Beijing where nobody there's no evidence that anybody was looking for him at all. Right. But he was using a false name. Right. But he claims now to fear returning to to China because the authorities will look for him. But as your honor just pointed out that, you know, they were only looking for him in one area. So probably you will be OK somewhere else. That's not petitioners claim. Petitioners claim is that he's being sought no matter where he goes in China. And that's why he can't return. And he and he also claimed that they consistently looked for him till 2010. Every three months going to his is his family's home. That's what his wife testified. That is what his wife testified to. But yet his wife had no issues leaving China. And neither did his daughter. Do you know whether the United States is actually deporting people to China now? I do not know, your honor. I guess that leads me to one of the final inconsistencies here. Let's in regards to petitioners employment, which I believe was already discussed quite a bit. But my understanding of the record, I was caused to question it. Let's listen to this argument. But I haven't confirmed it. But my understanding, the record is his asylum application. He states that he worked for the government from 1989 to 2004. So 15 years rough. He testifies that he worked for the government for 10 years. He then ultimately agrees that he worked for the government from 1989 to 2004. This inconsistency does go to the heart of his claim. And the fact that he it's really important to understand this distinction here is he claims that he was fired from his job of 15 years for the very same basis that he claims persecution. Therefore, it makes it was fired right after he was arrested. Yes, your honor. We filed a complaint for the for the beating and being detained. And based on that report, he was then fired. What would be important to distinguish here is that if he claimed that he was fired for some other reason not relating to his claim of persecution, that's not what we have here. It is part and parcel. It is a part of the same narrative that basically I was persecuted in China. I complained about it and the government denied that the CIA denied that the man worked for the local government in China who was a government employee. I don't think there's any dispute in the record, your honor. Okay. I had a question. You argue that if the petitioner is not credible, then the notice and opportunity requirement do not apply. This is about inconsistencies, your honor, or I'm sorry, this because I think this is probably corroboration because you cite Ren. Okay, so I because I know that you got us there's two different notice issues in this case. So if we're on if we're talking about cooperation. I was just wondering your brief you say that basically the notice and opportunity requirement do not apply to non credible applicants. Correct, your honor. That is, that is my our reading of Ren, as well as our reading of the statute. Ren doesn't specifically say that does it. I believe it does, your honor. I read it say I mean Ren talks about what's required of credible applicants but it doesn't say, none of this applies to a non credible. I apologize, your honor, I'm referring to the wrong case, I'm referring to C2 and C2. We're discussing. Yes, absolutely. So Ren is about Ren is more about how to provide notice and opportunity for cooperating witness C2 on the other hand, is a case where the court found that the adverse credibility finding was not supported by substantial evidence. And at that point, the court said well you know what he's now otherwise credible. And so now he is afforded the opportunity to cooperate. And so response position is that we are not in an otherwise credible center. What if we decide that he was otherwise credible. Yes, then what do we do right so now so if you were to go respond does not concede, but if you were to go down that road. So the next step is, he needs to be provided an opportunity. And was he. Yes, your honor. So, or specifically three instances where the brother's testimony was brought up. First being brought not brought up. Where was he told you need to have that corroborated prior to the issuing of the of the immigration judges opinion, six months after the record was closed. Yes, your honor but absolutely petitioner could have asked for a motion to reopen and a continuance which was granted for his wife. So there's no indication that the immigration judge would not agree. If I if I may, your honor. I guess maybe perhaps where we are trying to figure out what was the correct time and what was the most appropriate time for the immigration judge to say, I need you to cooperate with your brother's testimony. And it seems that there, there seems to be a lot of discussion of asking him to cooperate. Prior to the close of the record. However, I would point out that in Ren, this court commented that that could perhaps be a due process issue. If, if the finder of facts, if prior to hearing all of the facts, says I need you to cooperate. That's perhaps unfair considering that he's now come to a conclusion, prior to the close of evidence here, the immigration judge. After the hearing prior to announcing the decision asked if his client or the petitioner's counsel understood. I can draw a negative inference from his brother's not testifying. That is a clear broadcast to petitioners counsel of what is about to happen. He has to at least try and ask for continuance for an opportunity to call the brother. Instead, all his counsel said was, yes, I understand. That is, that is not that is not sufficient to invoke an argument at this level that he was not allowed an opportunity to care he has to at least try and ask the immigration judge for an opportunity to care. Well over your time, I'm so sorry. Let you go. Thank you very much. I will give the president. Good morning. May it please the court. As for the spleen injury and medical certificate the BIA did consider both issues in their opinion as inconsistencies and they cited to the full scope of testimony, relating to the nature and the extent of the injuries in the hospitalization. And as for the cat claim the BIA did not reach the issue so the cat claim should be reviewed below and recognition of the new record, as they are based on the same factual predicate and consideration. As for the brother there's no evidence that the brother could have corroborated the basis for petitioners claims, and the government stated that the petitioner claimed really corroborated his own arrest right. Yes corroborated his own. Oh, I'm sorry that seven. Yes, brother could have corroborated his own arrest in 2007 that's right but it's not a ground relied upon by the petitioner at any point in testimony or declarative documents for the persecution claim. In fact, it's separate as the, the petitioner argued political opinion, and not religious persecution. So these are two separate issues. Did the brother's arrest go to the heart of Dank's claim of persecution. No, your honor it's disparate in geography time and cause from petitioners arrest petitioner was arrested for speaking out for political dissidents after his mother's party not for religious observation and not much is clear on both of his I 589 forms, and his in court testimony he's consistent on the matter. And as for the issue of corroboration in Ren, the rent court specifically explicitly relied on the language of the real ID act to interpret what should happen if a burden is not met versus what should happen if a judge finds a petitioner is in fact incredible and that relies on the interpretation of the real ID act which does not apply here in a real pre real ID case. As for the other bases the government mentioned, none for none of those bases was the petitioner provided a reasonable opportunity to explain, and for none of those was he provided a reasonable opportunity to explain that was followed by a cogent articulable basis for rejection by the immigration judge, it's nowhere in her opinion which consists mostly of observations not arguments or analysis and for those reasons this court should grant remand. No, thank you. Thank you again to the University of Irvine, Mr. So, all of you did an excellent job. Thank you very much. Yeah, Garland would be submitted.
judges: WARDLAW, KOH, UNKNOWN